IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SUZANNE LUCERO PROVENCIO,

        Plaintiff,

v.                                                                                                    CIV 20-0227 KBM

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

        Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand, with Supporting Memorandum (*Doc. 26*), filed on January 15, 2021. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 3*; *11*; *12.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted in part.

**I.**     **Procedural History**

Ms. Suzanne L. Provencio (Plaintiff) protectively filed an application with the Social Security Administration for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, on July 28, 2016. Administrative Record[2] (AR) at AR 431-34. She

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Documents 19-1 through 19-11 comprises the sealed Administrative Record. *See Docs. 19-1–19-11.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

alleged a disability onset date of July 28, 2016. *See* AR at 433.

Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 336-45) and on reconsideration (AR at 346-57). Plaintiff requested a hearing with an Administrative Law Judge (ALJ) on the merits of her application. AR at 369-72. Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 281-335. ALJ Ben Ballengee issued an unfavorable decision on February 19, 2019. AR at 55-70. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 421-24), which the council denied on January 15, 2020 (AR at 1-7). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.     Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the

assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work (PRW). 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process,[3] ALJ Ballengee found that Plaintiff "has not engaged in substantial gainful activity since" her alleged onset date. AR at 60 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: antiphospholipid syndrome [("APLS")] on long-term anticoagulant therapy; moderate persistent asthma; chronic fatigue; myofascial pain; and lymphocytic colitis." AR at 60 (citing 20 C.F.R. § 404.1520(c)). ALJ Ballengee also noted that Plaintiff "has non-severe hyperlipidemia, hypothyroidism, gastro-esophageal reflux disorder (GERD), history of possible celiac disease, essential tremor, and intractable migraines." AR at 61.

---

[3] ALJ Ballengee first found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2021." AR at 60.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 61 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ determined that:

> [Plaintiff] has the [RFC] to perform light work as defined at 20 [C.F.R. §] 404.1567(b) and SSR 83-10 except that she can tolerate occasional exposure to humidity and wetness; dust, odors, fumes and pulmonary irritants; and extreme cold.

AR at 61. The VE testified, and the ALJ determined, that Plaintiff is capable of performing her PRW as a secretary and a receptionist. AR at 64. Ultimately, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 28, 2016, through the date of [the ALJ's] decision." AR at 65 (citing 20 C.F.R. § 404.1520(f)).

### III. Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original)). The Court will "consider whether the ALJ followed the

4

specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV. Discussion

Plaintiff contends that the following issues require reversal: (1) the ALJ erred by failing to consider Plaintiff's combination of impairments in the RFC; (2) the ALJ did not properly consider the medical opinion evidence; and (3) the ALJ did not adequately consider Plaintiff's statements. *Doc. 26* at 5-21.

### A. The ALJ adequately considered Plaintiff's impairments in combination.

Plaintiff contends that while the ALJ briefly discussed Plaintiff's non-severe impairments at Step Two, he did not mention them elsewhere in the decision. *Doc. 26* at 6. She asserts that this constitutes harmful error, "since the limitations from [her] GERD, essential tremor, and intractable migraines impact her RFC and were not considered by the ALJ." *Id.*

"An ALJ must consider the combined effect of all the claimant's impairments,

both severe and non-severe, throughout the disability determination process." *Allison v. Saul*, No. 2:19-CV-01183-LF, 2020 WL 6707858, at *7 (D.N.M. Nov. 16, 2020) (citing *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004)) (subsequent citations omitted). In this case, ALJ Ballengee listed Plaintiff's non-severe impairments at Step Two. AR at 61. In relevant part, the ALJ found that Plaintiff "underwent prolonged pH monitoring in 2016, which showed normal acid exposure to the esophagus and a normal number of reflux episodes." AR at 61 (citing AR at 608). Plaintiff denied dysphagia in 2016 and "reported no issues with reflux" in 2018. AR at 61 (citing AR at 610, 1475). The ALJ observed that Plaintiff "reported migraines and tremors" in 2015 but "had not sought treatment" since 2013. AR at 61 (citing AR at 925) Plaintiff told her doctor "that her headaches were improving, and her doctor noted that [her] tremor was mild." AR at 61 (citing AR at 925 ("Currently, her neurologic conditions are stable and are not limiting her ability to work.")).

At Step Three, the ALJ found that Plaintiff has neither an impairment nor a combination of impairments that met or medically equaled the severity of a listed impairment. AR at 61. In assessing Plaintiff's RFC, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." AR at 62. The ALJ also discussed Plaintiff's stomach problems and headaches, specifically noting her reports of chest pain due to gastrointestinal issues, visits to the gastroenterologist, and improvements in stomach issues in 2017. AR at 62-64 (citing, *e.g.*, AR at 610, 636, 1396).

"The Court's 'general practice, which we see no reason to depart from here, is to

take a lower tribunal at its word when it declares that it has considered a matter.'" *Allison*, 2020 WL 6707858, at *7 (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)). It is clear from "the ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all of [Plaintiff's] impairments." *Id.* (quoting *Flaherty*, 515 F.3d at 1071). Moreover, while Plaintiff alleges the ALJ failed to adequately consider three non-severe impairments, she "does not identify how any of these conditions, either individually or in combination, affected her functioning during the time she claims she was disabled." *Bales v. Colvin*, 576 F. App'x 792, 799 (10th Cir. 2014) (citing 20 C.F.R. § 404.1512(c) (requiring that a claimant "provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled")). The motion will be denied with respect to this issue.

### B. Plaintiff has demonstrated reversible error in the ALJ's analysis of one of the record opinions.

Plaintiff argues that ALJ Ballengee did not adequately consider five opinions from treating providers: (1) Teresa Jenkins McCord, Certified Adult Nurse Practitioner (CANP); (2) Thomas Riley, MD; (3) Kimberly Reiter, MD; (4) Kate Musello, MD; and (5) Kenneth Smith, MD. *Doc. 26* at 6-16. The Court begins with the medical opinions.

#### 1. The Treating Physician Rule[4]

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record;

---

[4] Because Plaintiff filed her claim before March 27, 2017, 20 C.F.R. § 404.1527 applies.

7

this is known as the 'treating physician rule.'" *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley*, 373 F.3d at 1119). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762).

If an ALJ decides that a treating physician's opinion is entitled to less than controlling weight, the ALJ must follow two steps. *See id.* at *5. "First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record." *Id.* If the opinion is not well-supported by the medical evidence or if it is "inconsistent with other substantial evidence in the record[,]" the ALJ will not give the opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citations omitted). At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference he will accord the opinion after considering the six deference factors listed" in 20 C.F.R. § 404.1527. *Padilla*, 2015 WL 10383109, at *4; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Padilla*, 2015 WL 10383109, at *4 (quoting *Watkins*, 350 F.3d at 1300). "When evaluating any medical opinion in the record, the ALJ must give good reasons—reasons that are 'sufficiently specific to make clear to any subsequent reviewers'—for the weight that he ultimately assigns to" those opinions. *Id.* (quoting *Langley*, 373 F.3d at 1119). The ALJ's "determination, like all of his findings, must be supported by substantial evidence." *Id.*

        2.    <u>The ALJ's evaluation of the disputed opinions.</u>

The record contains a number of letter opinions from Plaintiff's treating providers. Five of the providers are relevant here. *See* AR at 585-90, 592-94. All the letters are dated prior to Plaintiff's alleged onset date. The ALJ summarized the opinions in one paragraph. He found:

> In 2015, [Plaintiff] attempted to obtain disability retirement benefits. As part of this application, [her] treating provider Teresa McCord, CANP reported that [Plaintiff's] fatigue made it harder for her to work and keep up with regular life activities. [AR at 594.] Dr. McCord also reported that [Plaintiff] could not work full time. [AR at 587.] Treating provider Thomas Riley, M.D. reported that [Plaintiff's] lymphocytic colitis interfered with her ability to function at work. [AR at 593.] Treating provider Kimberly Reiter, M.D. reported that [Plaintiff's] fatigue and gastrointestinal symptoms would frequently interrupt her work and make her regular job difficult to carry out. [AR at 585, 592.] Finally, treating provider Kate Musello, M.D. reported that it was impossible for [Plaintiff] to work. [AR at 589.] All of these opinions are given little weight, as they are vague, without reference to any specific functional limitations. Further, they are not supported by a detailed explanation, with references to specific objective testing. Finally, any statement about [Plaintiff's] ability to work involves an issue reserved to the Commissioner and is, thus, not given any special significance under 20 [C.F.R. §] 404.1527(d)(3) . . . . For all of these reasons, the above assessments are given little weight.

AR at 64. It is clear that the ALJ did not give controlling weight to any of the opinions. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (finding remand was

9

unnecessary where the ALJ "implicitly declined to give" a treating physician's opinion controlling weight). The Court will address the ALJ's analysis at the second step below.

### 3. Dr. Riley's opinion

On July 26, 2014, Dr. Riley signed a letter opinion stating that he had been Plaintiff's primary gastroenterologist for two years. AR at 588. He listed Plaintiff's diagnoses as celiac disease and lymphocytic colitis and mentioned that she has multiple food allergies. AR at 588. Dr. Riley noted that Plaintiff received a second opinion at the Mayo Clinic, which "concurred with [his] diagnoses and treatment recommendations." AR at 588. He stated that "[h]er symptoms have not responded to standard medical therapy" and a restricted diet. AR at 588. He also noted that "her ability to function at work . . . is frequently interrupted by episodes of diarrhea." AR at 588.

At the second step of the treating physician analysis, the Court is confident that the ALJ implicitly considered at least the first, second, and fifth factors, as he evaluated the entire opinion, in which Dr. Riley stated that he had seen Plaintiff for two years as her primary gastroenterologist. *See* AR at 588; *see also* AR at 31-32 (noting that he "considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527"). It appears ALJ Ballengee also implicitly considered the third and fourth factors, as he noted that Dr. Riley's letter did not refer to specific functional limitations and was unsupported by a detailed explanation or references to objective testing. AR at 64. Plaintiff, citing generally to the record, contends that Dr. Riley's "medical records support the finding that [Plaintiff] has diarrhea which would frequently interrupt her during the work day." *Doc. 26* at 12 (citations omitted). While this may be the case, the

ALJ elsewhere in his decision observed Dr. Riley's note that Plaintiff reported intermittent diarrhea (AR at 64 (citing AR at 610)) but also "reported an improvement in this symptom, and her doctor noted that it was well-managed with the use of Imodium as needed." AR at 64 (citing AR at 610). This July 7, 2016 medical note from Dr. Riley post-dates his letter opinion. Further, the ALJ may discount an opinion on the basis that it is not supported by relevant evidence, such as functional limitations. *See* 20 C.F.R. § 404.1527(c)(3); *Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012) (holding that "ALJ properly gave no weight to [a] conclusory form, which lacked any functional findings")). In short, the Court finds that the ALJ's evaluation of Dr. Riley's opinion is adequate and does not justify remand.

    4.   Dr. Reiter's opinion

  Dr. Reiter submitted two letter opinions. On June 14, 2014, she wrote that she had "evaluated [Plaintiff] from a rheumatology perspective." AR at 592. She noted several of Plaintiff's diagnoses and that her APLS "is being managed and is stable" with specific treatment. AR at 592. She also discussed Plaintiff's chronic fatigue syndrome and fibromyalgia accompanied by severe chronic daily fatigue and diarrhea that "interfere[] with her ability to function normally and to complete a regular workday." AR at 592. Finally, she noted that Plaintiff has sought help for her migraines and other diagnoses, but "traditional Western medicine" has failed to provide effective treatment. AR at 592. And on January 7, 2016, Dr. Reiter observed that Plaintiff continues to report that her "severe chronic daily fatigue and widespread musculoskeletal pain . . . interferes with her ability to function normally and to complete a regular work day." AR at 585. Dr. Reiter opined "that this is likely to be a long-term condition." AR at 585.

As with Dr. Riley, the Court finds that the ALJ implicitly considered the majority of the factors at the second step of the treating physician analysis, as Dr. Reiter noted that she sees Plaintiff "from a rheumatology perspective" and obviously had at least a two-year treatment relationship with her. AR at 588, 592. The ALJ also observed that Dr. Reiter failed to offer functional limitations or references to testing. AR at 64. Plaintiff recounts Dr. Reiter's notes from three office visits, which detail Plaintiff's history of [APLS, her GI symptoms and migraine headaches, her visits to the Mayo Clinic, and her (sometimes unsuccessful) attempts to treat her symptoms with medication. *Doc. 26* at 23 (citing AR at 1220, 1228-29, 1238, 1250). Yet, the ALJ discussed Plaintiff's GI symptoms and observed that both were alleviated with medication. AR at 63 (citing AR at 610). The ALJ also discussed Plaintiff's migraine headaches and noted that despite continuing headaches and fatigue, she was "doing better overall" in September 2017. AR at 63 (citing AR at 1396). Finally, the ALJ observed that Plaintiff "required anticoagulation medication for her [APLS], but, by 2017, she required no further treatment for this condition." (AR at 63 (citing AR at 1450)). The Court acknowledges that the ALJ did not discuss Plaintiff's treatment at the Mayo Clinic but finds that the ALJ's analysis of Dr. Reiter's opinion passes muster.

     5.     <u>Dr. Musello's opinion</u>

On February 3, 2015, Dr. Musello penned a short letter opinion, asserting that Plaintiff "has multiple serious medical conditions which make it impossible for her to work." AR at 589. Dr. Musello "support[ed] [Plaintiff's] application for disability." AR at 589. Plaintiff contends that "Dr. Musello's statement is supported by her clinical notes." *Doc. 26* at 14 (citing AR at 891-909, 1394-1448). Plaintiff lists a variety of symptoms

12

she reported to Dr. Musello, but again, the ALJ discussed most of these symptoms throughout his opinion. *See id.*; AR at 62-64.

To the extent ALJ Ballengee discounted Dr. Musello's opinion that Plaintiff's conditions "make it impossible for her to work[,]" the Court finds no reversible error. "Under the controlling regulations, the final responsibility for deciding the ultimate issue of whether a social security claimant is 'disabled' or 'unable to work' is reserved to the Commissioner." *Mayberry v. Astrue*, 461 F. App'x 705, 708 (10th Cir. 2012) (citations omitted); *see also* 20 C.F.R. § 404.1527(d)(1). Accordingly, the ALJ "is not bound by a treating physician's opinion on the ultimate issue of disability, and such an opinion is never entitled to controlling weight or special significance." *Mayberry*, 461 F. App'x at 708 (citing SSR 96-5p, 1996 WL 374183, at *1, *2, *5 (July 2, 1996)). More importantly, the ALJ did not reject Dr. Musello's terse opinion solely on this basis; he also found that it was devoid of functional limitations, a detailed explanation, or references to objective testing. *See* AR at 64. Again, the Court will deny the motion on this basis.

    6. <u>Dr. Smith's opinion</u>

Dr. Smith submitted two letter opinions. On February 9, 2015, he wrote that Plaintiff "ha[d] been a patient since December 2013 and is being monitored for [APLS] about every 6 months" and was not then "on any treatment." AR at 590. He mentioned Plaintiff's complaints of fatigue and "trace edema to her extremities" necessitating "restrictions for work or activities of daily living." AR at 590. Dr. Smith states that he has attached a "physician note with history and current status and most recent blood work[,]" but nothing follows the letter that corresponds to that information. AR at 590. Dr. Smith wrote again on January 12, 2016, and he reiterated that Plaintiff "is being treated with

lifelong anticoagulation for [APLS,]" which is "a condition that causes arterial or venous thrombosis" and requires lifelong "treatment and medical monitoring." AR at 586.

Plaintiff argues that Dr. Smith's records provide corroborating evidence of her "ongoing fatigue, shortness of breath, swelling of hands, frequent bowel movements, trace edema, migraines, and [notes] that her anti-coagulation therapy did not need to be adjusted." *Doc. 26* at 15 (citations omitted). She contends that Dr. Smith's "findings are consistent with the other medical evidence and opinions discussed above." *Id.* The ALJ did not discuss Dr. Smith's letter opinions at all, and the Commissioner fails to show harmless error in the ALJ's omission of any analysis on this provider. Because the ALJ failed to follow the treating provider analysis for Dr. Smith's opinions, the Court finds Plaintiff's motion should be granted and this matter remanded for the ALJ to consider Dr. Smith's opinions, and to reconsider the other providers' opinions in light of Dr. Smith's.

      7.    <u>CANP McCord's opinion</u>

Finally, CANP McCord submitted two letter opinions. On July 30, 2014, she listed Plaintiff's diagnoses as "asthma with obstruction, allergic rhinitis, food allergies and severe fatigue . . . ." AR at 594. She mentioned that Plaintiff "also experiences lymphocytic colitis and migraines[,]" which make it "harder for her to work and keep up with regular life activities." AR at 594. On December 8, 2015, CANP McCord wrote:

> [Plaintiff] has been a long standing patient . . . [who] has chronic sinus infection which is causing sleep issues and can not have surgery due to her [APLS]. She has chronic fatigue and lymphocytic colitis which is not controlled and is expected to last a lifetime. Currently due to her fatigue, sleep and diarrhea she is having difficulty keeping up with work. She has managed to perform well enough at her job at great personal cost. Currently she is unable to have any social life outside of work. Her multiple food

> allergies make it difficult to eat anything that she has not prepared at home and she is unable to summon enough energy to make necessary food preparations. Due to her multiple heath conditions she continues to have new food allergy and intolerance making adequate nutrition an issue.
> Due to her severe fatigue she is not able to work full time and her fatigue may affect her judement [sic] in regards to her current job. Please reconsider her disability request.

AR at 587.

Plaintiff argues that CANP McCord[5] was a longtime provider who was knowledgeable about Plaintiff's medical conditions. *Doc. 26* at 10. Again, she presents a litany of evidence that she argues "weigh[s] . . . in [Plaintiff's] favor." *Id.* at 10-11 (citations omitted). But the ALJ discussed much of the evidence and symptoms to which Plaintiff refers. For example, Plaintiff cites a February 21, 2017 record to show that she had sinus problems and associated symptoms including wheezing, coughing, and shortness of break, along with a moderate airway obstruction.[6] *Id.* at 10 (citing AR at 735-37). The ALJ cited the same record and noted the objective evidence that the "spirometry results were stable, suggesting only mild obstructive disease[,]" and "[a] respiratory examination . . . was normal." AR at 63 (citing AR at 737, 741). The ALJ also noted that Plaintiff denied wheezing and shortness of breath in September 2017. AR at 63 (citing AR at 1396). Plaintiff cites an August 13, 2015 record to show that her allergic rhinitis was not responding to treatment, so she would "continue to take allergy

---

[5] The Court notes that as a nurse practitioner, CANP McCord is not an "acceptable medical source" who can offer a medical opinion or "establish the existence of a medically determinable impairment." *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). The ALJ is still required to consider and weigh "other source" opinions using the same factors as those in weighing treating physicians. *See Valdez v. Colvin*, No. CV 14-0014 MCA/KBM, 2015 WL 13662602, at *2 (D.N.M. Feb. 22, 2015), *R&R adopted*, No. CV 14-0014 MCA/KBM, 2015 WL 13662604 (D.N.M. June 29, 2015).

[6] The Court notes that the full note reads: "PFT continues to show mod airway obstruction with stable FVC, improved FEV1, and improved MMEF c/t last PFT." AR at 737.

injections." *Doc. 26* at 10 (citing AR at 566). She also notes that she had severe congestion, and she could "not be off anticoagulation . . . when her antiphospholipid titer is high." *Id.* The ALJ cited to the same record and noted that "[i]n terms of her asthma, spirometry testing generally revealed mild obstruction." AR at 62 (citing AR at 571). Further, the ALJ discussed that the state agency medical consultants found that Plaintiff "could perform light work" while avoiding "concentrated exposure to extreme cold, wetness, humidity, and pulmonary irritants[,]" as these "limitations are required to prevent the exacerbation of [Plaintiff's] shortness of breath, pain, and fatigue." AR at 63-64 (citing AR at 1396). Other notes to which Plaintiff refers from CANP McCord include information about GERD, edema, and gastrointestinal issues (*Doc. 26* at 10-11 (citing AR at 559-60, 957)), all of which the ALJ discussed (AR at 62-64). Ultimately, Plaintiff fails to demonstrate reversible error in the ALJ's analysis of CANP McCord's opinions.

### C. The ALJ sufficiently considered Plaintiff's statements.

Plaintiff next argues that the ALJ did not adequately consider her statements concerning the limiting effects of her impairments under SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *Doc. 26* at 16. Specifically, she refers to her complaints of fatigue, pain, migraines, gastrointestinal issues, hypothyroidism, edema, and the limitations that result from these conditions. *Id.* at 16-20. Social Security Ruling 16-3p defines the two-step process an ALJ must use to evaluate a claimant's symptoms. SSR 16-3p, 2017 WL 5180304. At the first step, the ALJ "consider[s] whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce [the] individual's symptoms, such as pain." *Id.* at *3. At the second step, after the ALJ has found such an impairment, the ALJ "evaluate[s] the intensity and

persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities . . . ." *Id.*

> As part of the step two evaluation, the ALJ considers the record evidence, the claimant's statements, medical and non-medical source statements, and the non-exhaustive list of factors in 20 C.F.R. § [404].1529(c)(3), which include:
>
> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Ramirez v. Berryhill*, No. CIV 17-0781 KBM, 2018 WL 4915830, at *8 (D.N.M. Oct. 10, 2018) (quoting SSR 16-3p, 2017 WL 5180304 at *7-8).

Under these guidelines, the ALJ discussed the following:

"Daily activities": Plaintiff argues that "[t]he ALJ did not consider any of [her] activities of daily living" (*Doc. 26* at 20), which is belied by the record. ALJ Ballengee noted Plaintiff's testimony that she can "stand for one hour at a time and walk three blocks at one time[,]" and she has "trouble dressing, bathing, and caring for her hair" and "difficulty lifting, squatting, bending, sitting, kneeling, climbing stairs, remembering, completing tasks, concentrating, and using her hands." AR at 62 (citing AR at 281-335, 479-87).

"Location, duration, frequency, and intensity of pain or other symptoms": The ALJ's decision is peppered with citations to the record of Plaintiff's reports to her providers of

pain and other symptoms. The ALJ discussed Plaintiff's complaints of gastrointestinal issues (*see, e.g.*, AR at 62, 63 (citing AR at 610)) but noted that her diarrhea was well-managed with medication and she did not have abdominal pain or discomfort (AR at 63 (citing AR at 610, 1450)). He also noted that Plaintiff had no issues with reflux in 2018. AR at 61 (citing AR at 608). ALJ Ballengee mentioned Plaintiff's complaints of migraines but noted that she reported in 2015 that her headaches were improving (AR at 61 (citing AR at 925)) and she "was doing better overall" in 2017 despite the headaches (AR at 63 (citing AR at 1396)). He mentioned that Plaintiff's doctor called her tremor "mild" in 2015 and that she described it as an "annoyance." AR at 61 (citing AR at 925). Regarding her fatigue, the ALJ noted her complaints of "chronic fatigue in April of 2016, along with feeling faint and unsteady." AR at 63 (citing AR at 621). He also observed that she reported fatigue and myofascial pain in September 2017 but again stated "that she was doing better overall." AR at 63 (citing AR at 1396). Critically, the ALJ explicitly provided for Plaintiff's complaints of shortness of breath, pain, and fatigue by limiting her to light work with environmental limitations. *See* AR at 64.

"Type, dosage, effectiveness, and side effects of any medication": The ALJ summarized several medical records that demonstrated Plaintiff's gastrointestinal issues and hypothyroidism were well-managed on medication. AR at 61 (citing AR at 1449), 63 (citing AR at 610, 1396, 1450).

"Treatment other than medication" and "Any measures other than treatment an individual uses or has used to relieve pain or other symptoms": The ALJ observed that Plaintiff saw a chiropractor for pain in 2017. AR at 63 (citing AR at 1076). He also noted

that Plaintiff "did not experience many limiting complications from her impairments" and "her care was generally conservative." AR at 63.

Plaintiff argues that the ALJ did not consider "that certain treatments are unavailable to her due to her multiple drug intolerances." *Doc. 26* at 20. The Court agrees that aside from mentioning a "history of possible celiac disease" (AR at 61), the ALJ gave short shrift to Plaintiff's complaints of food and drug intolerances. Plaintiff does not, however, demonstrate that these food or drug intolerances lead to functional impairments for which the ALJ failed to account in the RFC. *See id.* Plaintiff also lists a variety of statements and symptoms she described throughout the record to support her allegations of the limiting effects of those symptoms. *Id.* at 18-21. As described above, the ALJ discussed some of this evidence. More importantly, the ALJ is not required to "discuss" every piece of evidence in the record, but to "consider" it. *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996)). ALJ Ballengee stated that he considered all of Plaintiff's symptoms and the record evidence. AR at 62. Generally, if an ALJ writes that he has "considered" the evidence, federal courts in the Tenth Circuit take him "at his word." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (quoting *Flaherty*, 515 F.3d at 1071) (brackets omitted). This case is no exception.

In short, the Court finds that the ALJ adequately evaluated Plaintiff's statements pursuant to SSR 16-3p and summarized the record in light of Plaintiff's statements. The Court may not reweigh the record evidence; it may only review the ALJ's "decision to ensure that [he] applied the correct legal standard and that [his] findings are supported by substantial evidence." *Kayser v. Berryhill*, No. 16-cv-0978 SMV, 2017 WL 4857442,

at *3 (D.N.M. Oct. 25, 2017) (citing *Clifton*, 79 F.3d at 1009). The Court finds that the ALJ's findings regarding Plaintiff's subjective complaints of her symptoms are supported by and linked to substantial evidence in the record. *See id.* at *4 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Plaintiff's motion is denied on this issue.

## V.    Conclusion

Plaintiff fails to show that the ALJ committed any reversible error in considering the effects of her non-severe impairments in combination with her severe impairments or her subjective symptoms. Regarding the opinions of her treating providers, however, Plaintiff has established that the ALJ erred by failing to analyze the two letter opinions of Dr. Smith. The ALJ's analyses of the remaining treating providers was adequate but should be reevaluated in light of Dr. Smith's opinion.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (*Doc. 26*) is **GRANTED in part,** and this matter is **REMANDED** for further proceedings in light of this Opinion.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent